# The State, *ex rel.* Inglis *v.* Nicholson.

*Proceeding in nature of Quo Warranto, against County Commissioner.*

1. *Election of county commissioners, under special statute.*—Under the special statute approved January 29th, 1879, authorizing the Commissioners Court of several counties named, of which Jackson is one, "to lay off said counties into four commissioners' districts" (Sess. Acts of 1878-9, p. 208) ; and further providing that "the qualified voters of said counties shall elect one commissioner for each district, whose term of service shall commence at the expiration of the terms of the present incumbents, and said commissioners shall reside in the district for which they are severally elected" ; although all the qualified voters of the county vote for each of the four commissioners, the person receiving the greatest number of votes in each district is the commissioner for that district, although two persons in another district each received more votes than he.

APPEAL from the Circuit Court of Jackson, or from a judgment rendered in that county by Hon. LOUIS WYETH, the presiding judge of the fifth judicial circuit.

This proceeding was commenced by a petition, in the name of the State of Alabama, on the relation of Elijah R. Inglis, verified by affidavit, and filed in the office of the clerk of said Circuit Court. The petition alleged that, under and pursuant to a special act of the General Assembly approved on the 29th January, 1879, said county of Jackson was by the Commissioners Court divided into four commissioners' districts ; that afterwards, on the first Monday in August, 1880, a regular election was held in said county for county commissioners, or members of the Commissioners Court ; that at said election, the relator and one Warren D. Nicholson, who was prayed to be made a defendant to the petition, both being candidates, the relator received 965 votes, which was a majority of the votes cast, while Nicholson received only 889 votes ; that the supervisors of the election, "acting under a misapprehension of their legal duty," gave a certificate of election to said Nicholson, and so certified to the secretary of State ; and that Nicholson thereupon gave bond, and entered on the performance of the duties of the office, to which the relator was in fact and in law elected. A copy of the official returns as to the result of the election, made under oath by the supervisors, was annexed as an exhibit to the petition, the return as to the election of commissioners being in these words :

" *For County Commissioners :* C. C. Spiller, 1st district, had 1,794 votes; C. C. Cloud, 1st district, had 317 votes; P. W. Cargile, 1st district, had 854 votes; Samuel Shipp, 2d district, had 1,003 votes; *E. R. Inglis, 2d district, had 965 votes ;* A. A. Jay, 2d district, had 902 votes; Orrin Hill, 2d district, had 111 votes; *W. D. Nicholson, 3d district, had 889 votes ;* Jas. McCutchen, 3d district, had 228 votes; Sam. Vaughn, 3d district, had 270 votes; C. Evans, 3d district, had 750 votes; T. L. Matthews, 3d district, had 660 votes; James Jordan, 3d district, had 729 votes; G. R. Hodges, 4th district, had 1,484 votes; L. B. Jones, 4th district, had 733 votes; R. L. Potter, 4th district, had 916 votes; S. Cardin, 4th district, had 498 votes."

The special statute under which the county was divided into four commissioners' districts, entitled "An act to authorize the Commissioners Courts of Crenshaw, * * *Jackson*, Bibb and Chilton counties, to lay off said counties into four commissioners' districts," contains three sections. By the first section it is enacted, "that the Commissioners Courts of Crenshaw, * * *Jackson*, Bibb and Chilton counties, be authorized, and are directed, to lay off said counties into four commissioners' districts, as near equal in population as may be." The second section provides, "that the qualified voters of said counties shall elect one commissioner for each district, whose term of service shall commence at the expiration of the terms of the present incumbents; and said commissioners shall reside in the district for which they are severally elected." The third section repeals all existing laws inconsistent with said special law.—Session Acts 1878–9, p. 208.

Notice of the filing of the petition having been served upon Nicholson, he appeared, and filed a demurrer, specifying three grounds of demurrer : 1st, " because said petition does not allege that said Inglis, at the time of said election, resided in the same commissioners' district with this defendant" ; 2d, " because it is nowhere alleged that said Inglis resided in the same commissioners' district with this defendant at the date of filing said complaint " ; 3d, " because it is nowhere alleged that said Inglis was elected commissioner for the same district in which this defendant resides and claims to have been elected."

At the foot of the demurrer, or just beneath it, are copied in the transcript these words : " Demurrer sustained, and contestant (plaintiff) excepts " ; to which the name of Judge WYETH is signed, followed by a memorandum of the clerk, " Filed October 29th, 1880." This is the only judgment shown by the record. It is now assigned as error, " that the Circuit Court erred in sustaining the demurrer, or the several causes of demurrer, assigned to the complaint, or relation,"

ROBINSON & BROWN, for appellant.

HUNT & TALLY, *contra.*

STONE, J.—An act was approved January 29th, 1879 (Pamph. Acts, 208), " to authorize the Commissioners Courts of " several counties, of which Jackson is one, " to lay off said counties into four commissioners' districts." It is inferable from the complaint, or relation in this cause, and particularly from the exhibit thereto, that the Court of County Commissioners of Jackson county obeyed this mandatory statute, and laid off their county into four commissioners' districts. The exhibit shows, that each of the candidates voted for was designated as a candidate for a particular district, distinguishing them by the numerals 1, 2, 3, 4. Three candidates were voted for, as of the first district, of whom Spiller was declared elected, he receiving 1,794 votes. The next highest vote was for Hodges, of the fourth district, he receiving 1,484 votes. The next highest was Shipp, he receiving 1,003 votes, for the second district. Inglis, the relator, was voted for as of the second district, and received 965 votes, the next highest number of votes cast in the election for county commissioners. He could not claim election for the second district, for Shipp had received a larger vote for that district than he had. For the third district there were six candidates voted for, and Nicholson received 889 votes, the largest number polled for any candidate for that district. His vote, it will be seen, was less than that cast for Inglis, and on that account the latter claims the office.

The statute under which these districts were laid off, is somewhat unusual in its provisions. All the qualified voters of the county vote for each member of the court; but the commissioners " shall reside in the district for which they are severally elected." We think this language furnishes a key for the interpretation of the statute. It shows that the commissioners, although voted for by the whole county, are nevertheless elected for a particular district. To accomplish this, the voter's ballot must not only express the name of the person for whom it is cast, but must go further, and designate the number of the district, for which he proposes to elect such person. Less than this can not carry out the purpose of the statute, which is, that a commissioner shall be elected for each district separately. And the statute provides that the commissioner shall reside *in the district for which he is elected.* Possibly, a removal into the district before taking the office would satisfy this last condition; but we need not decide this.

The relation in this case is fatally defective. It not only fails to show that Inglis was elected commissioner for the third district, but it shows he did not receive a vote for that office ; and it fails to aver he resided in that district, when he instituted the present proceedings. The demurrer of defendant was rightly sustained.

Affirmed.